OPINION
On January 19, 1999, appellee, the Stark County Department of Job and Family Services, filed a complaint for temporary custody of Amire Dixon born May 30, 1998, alleging the child to be neglected. Mother of the child is appellant, Geneita Turner; father is Kevin Dixon. A case plan was filed on February 9, 1999 based on appellant's past history with appellee. By judgment entry filed April 9, 1999, the trial court found the child to be neglected and granted temporary custody of the child to appellee.
On December 16, 1999, appellee filed a motion for permanent custody. Hearings were held on January 31, 2000 and April 13, 2000. By judgment entry filed May 17, 2000, the trial court awarded permanent custody of the child to appellee. The trial court also filed findings of fact and conclusions of law.
Following remand by this court, the trial court conducted a best interest hearing on January 3, 2001. By judgment entry filed January 9, 2001, the trial court found the best interests of the child would be served by granting permanent custody to appellee.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WILL BE SERVED BY A GRANTING OF PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I, II
Appellant claims the trial court's decision in granting permanent custody of the child to appellee was against the manifest weight of the evidence. Appellant claims the evidence fails to establish the decision is in the best interests of the child and the child cannot be placed with her in a reasonable time. We disagree.
As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code;
 The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 The parent has had parental rights involuntarily terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child.
 The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
Any other factor the court considers relevant.
R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition issued under section 2151.353
or 2151.415 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after the effective date of this amendment;
 The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.
The case plans filed herein called for both parents to attend Goodwill Parenting and Quest Recovery Services for evaluation and treatment as necessary. April 13, 2000 T. at 11. In addition, paternity was to be established. Id.
Paternity was established during the summer of 1999 and Mr. Dixon was deemed to be the father of the child. Id. at 12.
Appellant attended Goodwill Parenting and received the minimum certificate, a Certificate of Attendance. Id. at 13. Mr. Dixon did not attend Goodwill Parenting because after his release from jail, he moved to California.[1] Id. at 13. Although Mr. Dixon attended parenting classes outside the state of Ohio, the classes were not as intense or extensive as Goodwill's therefore appellee deemed them unacceptable. Id. at 13-14, 20-21.
Appellant attended Quest but was terminated for non-compliance. Id. at 14. Mr. Dixon never attended Quest after his return to Ohio and never provided documentation of out of state substance abuse counseling. Id. at 15-16.
In February of 2000, appellant told appellee she was moving to Mississippi and stopped visiting the child at that time. Id. at 16. Mr. Dixon visited the child prior to his moving to California but has not visited the child since his return to Ohio. Id. at 17. Mr. Dixon has visited the child only once in over a year. Id. at 18. Although Mr. Dixon is employed, he does not pay child support. Id. at 43.
Appellee has permanent custody of appellant's three other children.Id. at 9.
Clearly neither parent completed the case plan. Mr. Dixon made no attempts to complete the case plan until after the motion for permanent custody had been filed. The evidence establishes this was an attempt to do "too little, too late" some eleven months after the filing of the case plan.
As for the best interest of the child, the evidence establishes there has been minimum contact and bonding with the parents. January 3, 2001 T. at 11-13. The child is two and a half years old and has bonded well in the foster home and is suitable for adoptive placement with the foster parents. Id. at 8, 10, 14-15. Although the paternal grandmother stated to appellee in January/February of 2000 that she was willing to help, she made no attempts to contact the caseworker prior to the permanent custody hearing in April. April 13, 2000 T. at 35-36, 79.
Upon review, we find there is clear and convincing evidence to support the trial court's decision to grant permanent custody of the child to appellee.
Assignments of Error I and II are denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is affirmed.
 __________ Farmer, J.
Farmer, J. Hoffman, P.J. and Wise, J. concur.
[1] Mr. Dixon was in the Stark and Wayne County Jails for driving on a suspended license. In 1993 Mr. Dixon was incarcerated for aggravated trafficking. April 13, 2000 T. at 48-50.